# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BROADCAST MUSIC, INC., CONCORD MUSIC GROUP, INC. d/b/a JONDORA MUSIC; EVIL EYE MUSIC, INC.; BOCEPHUS MUSIC INC.; ABKCO MUSIC, INC.; CYANIDE PUBLISHING; HOUSE OF CASH, INC.; SONY/ATV SONGS LLC d/b/a SONY/ATV TREE PUBLISHING; COMBINE MUSIC CORP.; UNICHAPPELL MUSIC, INC.; UNIVERSAL-SONGS OF POLYGRAM INTERNATIONAL, INC.; TOKECO TUNES; PAINTED DESERT MUSIC CORPORATION, and CENTRAL SONGS, a division of BEECHWOOD MUSIC CORPORATION,** <br>   Plaintiffs <br><br> v. <br><br> **THE STATION HOUSE IRISH PUB & STEAKHOUSE, LTD d/b/a STATION HOUSE IRISH PUB & STEAKHOUSE; GARY RUSSO and CHRISTOPHER BENSON, each individually,** <br>   Defendants | No. 3:13cv2494 <br><br> (Judge Munley) |

## **MEMORANDUM**

Before the court is plaintiffs' motion for default judgment (Doc. 15). The motion has been briefed and argued and is ripe for disposition.

**Background**

This case arises out of the performance of copyrighted material at The Station House Irish Pub & Steakhouse in Gouldsboro, Pennsylvania. Plaintiffs contend that performances at the restaurant violated their rights under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*.

Plaintiff Broadcast Music Incorporated (hereinafter "BMI") is a "performing rights society," licensing the right to publicly perform a repertoire of copyrighted musical compositions on behalf of the owners of those copyrights.[1]  (Doc. 16, Pls' Br. in Supp. Mot. for Default J. at 2).  The remaining plaintiffs own the copyrights to the compositions allegedly played at defendants' establishment.  (Id.)

Defendant Station House Irish Pub & Steakhouse (hereinafter "The Station House") is a limited liability company which operates, maintains and controls an establishment known as Station House Irish Pub & Steakhouse in Gouldsboro, Pennsylvania.  (Doc. 1, Complaint (hereinafter "Compl.") ¶ 18). Defendant Gary Russo is the President of The Station House with

---

[1]  BMI has acquired the non-exclusive public performance rights for each of the compositions in question.  (Doc. 16, Pls' Br. in Supp. Mot. for Default J. at 2).  BMI grants music users like broadcasters and owners and operators of concert halls, restaurants, nightclubs and hotels the right to publicly perform any of the works in BMI's repertoire through a "blanket license agreement."  (Id.)

responsibility for its operation and management. (Id. ¶ 21). Defendant Christopher Benson is the Vice President and Secretary of The Station House with responsibility for its operation and management. (Id. ¶ 23). The Station House publicly performs musical compositions at the restaurant including performances of live and recorded music. (Id. ¶ 19; Doc. 16, Pls.' Br. in Supp. Mot. for Default J. at 3).

Beginning in July 2009, BMI learned that The Station House was offering musical entertainment without a license from BMI, or without permission from the copyright owners. (Doc. 17, Declaration of Lawrence Stevens (hereinafter "Stevens Decl.") ¶ 3). BMI sent a letter to the defendants stating that defendants required a license to perform music from BMI's repertoire. The letter also contained an informational brochure, a BMI license agreement and a licensing fee schedule. (Id.) BMI received no response from the defendants. (Id.)

From September 2009 through November 2011, BMI repeatedly sent additional letters to the defendants informing them that they needed permission to offer public performances of BMI's copyrighted music. (Id. ¶ 5). On September 27, 2010, after receiving no response to any of their advisory letters, BMI sent defendants a cease and desist letter instructing defendants that they should cease public performances of music licensed by BMI. (Id. ¶ 6).

From September 2011 through July 2013, BMI sent defendants sixteen (16) additional letters notifying them that the cease and desist letter remained in full force and effect.  (Id.)  BMI's telephone records indicate that its licensing personnel telephoned defendants on ninety-four (94) occasions and spoke to persons associated with The Station House advising them that they were offering unauthorized public performance of BMI-licensed music and that a license was required.  (Id. ¶ 8).  Defendants nevertheless failed to enter into a license agreement with BMI and continued to offer unauthorized public performance of BMI music.  (Id. ¶ 9)  BMI then sent an investigator to The Station House who made an audio recording and prepared a written report naming the seventeen songs referenced in this lawsuit as ones played by a band in the restaurant on July 20, 2013 (Id. ¶ 10).[2]

In response, plaintiffs filed a complaint on October 2, 2013 alleging copyright infringement for each of the seventeen (17) songs annexed to the complaint.  (See Doc. 1).  The defendants failed to file a responsive pleading

---

[2]  The infringement allegedly involved the following compositions: "Bad Moon Rising," "Boy Named Sue a/k/a A Boy Named Sue," "Country Boy Can Survive a/k/a A Country Boy Can Survive," "Dead Flowers," "Every Rose Has Its Thorn," "Family Tradition," "Folsom Prison a/k/a Folsom Prison Blues," "I Walk The Line," "Lookin' Out My Back Door," "One Little Piece At A Time a/k/a One Piece At A Time," "Sunday Mornin' Comin' Down," "Teenager In Love a/k/a A Teenager In Love," "Who'll Stop The Rain," "You Ain't Much Fun," "Ring of Fire," "Get Rhythm," and "Courtesy of the Red, White and Blue (The Angry American)."

within the time period provided by the Federal Rules of Civil Procedure or by the Court's October 4, 2013 Order (Doc. 6). On February 25, 2014, plaintiffs filed a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b) and brief in support thereof. The defendants failed to file any response to the plaintiffs' motion for default judgment and the court determined that a hearing on the motion was necessary to determine plaintiffs' relief.

On March 21, 2014, the court ordered plaintiffs to provide the court with mailing addresses of the individual defendants Gary Russo and Christopher Benson and on March 27, 2014 plaintiffs provided the court with the mailing addresses of the individual defendants. (See Docs. 21, 22). On May 28, 2014, the court mailed notice of the August 5, 2014 damages hearing to the residential mailing addresses of the individual defendants as well as to the known listed business address of The Station House.

On August 5, 2014, a hearing regarding the determination of plaintiffs' damages was held and the defendants failed to appear for the hearing. Accordingly, the court heard argument from the plaintiffs, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States.").

**Discussion**

Plaintiffs' motion for default judgment seeks damages against the defendants for copyright violations. Specifically, plaintiffs request the following relief: (1) an injunction preventing the defendants from infringement of any copyrighted material licensed by BMI pursuant to 17 U.S.C. § 502; (2) statutory damages pursuant to 17 U.S.C. § 504(c); and (3) costs and attorney's fees pursuant to 17 U.S.C. § 505. (See Doc. 15, Mot. for Default J.). The court must now determine whether and to what extent plaintiffs are entitled to their requested relief.

### A. Injunction

Plaintiffs seek a permanent injunction to prevent further copyright infringement. Section 502(a) of the Copyright Act provides that a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of copyright." 17 U.S.C. § 502(a). Courts have found that "[w]hen past infringement and a substantial likelihood of future infringements is established, a copyright holder is ordinarily entitled to a permanent injunction against the infringer." A & N Music Corp. v. Venezia, 733 F. Supp. 955, 957 (E.D. Pa. 1990); see also, Erni Mills, Inc. v. Empress Hotel, Inc., 470 F. Supp. 2d 67, 74 (D.P.R. 2006) (finding that "'[i]f liability is established and a continuing threat to the copyright

exists, courts have usually granted permanent injunctions.'") (quoting Pedrosillo Music, Inc. v. Radio Musical Inc., 815 F. Supp. 511, 516 (D.P.R. 1993)).

Here, an injunction is warranted. The defendants have not disputed liability. Plaintiffs have also demonstrated a threat of continuing infringement. Plaintiffs warned defendants repeatedly over a period of several years of the need to obtain a performance license for the compositions in their repertoire, and defendants refused to do so and continued to publicly perform BMI's copyrighted music. Further, defendants have failed to obtain a licensing agreement from BMI. The court thus finds that there is a substantial likelihood that defendants will continue to violate plaintiffs' copyrights. The court will, therefore, grant plaintiffs' request for a permanent injunction.[3] See A & N Music Corp., 733 F. Supp. at 957 (finding a permanent injunction appropriate because of an established copyright violation and "a threat of continuing infringement in light of defendant's disregard of ASCAP's repeated warnings concerning the need to have a proper licensing agreement."); Broad. Music, Inc. v. Spring Mt. Area Bavarian Resort, LTD., 555 F. Supp. 2d 537, 544 (E.D. Pa. 2008) (finding that permanent injunction was in part justified because "we believe it is likely that Defendants will infringe upon those rights again in the future.").

---

[3] The injunction will end if the defendants secure the proper license.

### B. Money Damages

Plaintiffs seek monetary damages of $3,000 per copyright violation, arguing that the violation was willful. The copyright act provides that a copyright infringer "is liable for either-(1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a)(1)-(2). A copyright owner "may elect . . . to recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the copyright owner proves a willful copyright violation, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). The decision of whether to award statutory damages is left to a "sound exercise of judicial discretion." F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 234 (1952).

To determine whether defendants' violation was willful, the court must consider "'whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility.'" Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 288 (2d Cir. 1999) (quoting Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993)).

Defendants' conduct in failing to secure a license was willful. Plaintiffs wrote to defendants repeatedly to inform them of their infringing activities and to demand that they purchase a license. Plaintiffs provided defendants with an informational brochure by which they could have determined whether songs performed in the restaurant required a BMI agreement. Plaintiffs also sent defendants a "cease and desist" letter informing them that they were violating plaintiffs' copyrights and several letters thereafter asserting that the cease and desist letter remained in full force and effect. Moreover, representatives from BMI telephoned defendants on ninety-four (94) separate occasions informing defendants that they were committing copyright infringement by performing BMI's music without a license. As such, defendants were either aware of the infringement or willfully disregarded the possibility that the performance on the night in question violated the plaintiffs' copyrights. See Prater Music v. Williams, 5 U.S.P.Q. 2d 1813, *8 (W.D. Mo. 1987) (finding that "[w]here a defendant continues to infringe upon copyrights despite repeated warnings, courts have found defendant's conduct to be willful.").

Beyond the question of willfulness, the court must also take into account the purpose of such awards, which is to compensate the plaintiff for lost profit and other injury, as well as "to discourage wrongful conduct." Woolworth, 344 U.S. at 233. Thus, "[t]he court's award should be designed to compensate

plaintiffs as well as to punish defendant." Prater Music, 5 U.S.P.Q. 2d at *9. "Recognizing the important deterrent purpose served by statutory damages, courts routinely compute statutory damages in cases . . . [involving copyright infringement] between two to six times the license fees defendants 'saved' by not obeying the Copyright Act." EMI Mills Music Inc., 470 F. Supp.2d at 75.

      The court finds that $1,700.00 per violation is a more appropriate number by which to calculate damages. Plaintiffs have represented that if the defendants had purchased the proper licenses at the time BMI first contacted them in July 2009, the estimated license fees between April 2009 and February 2014 would have been $20,276.67. (Doc. 17, Stevens Decl. ¶ 16). A current license would cost the defendants $4,223.33. (Id.) Thus, if defendants had purchased a license in July 2009, when BMI first contacted them, they would have purchased approximately five licenses before the time of the violation. Such licenses would have cost the defendants at minimum $4,223.33 x 5, or $21,116.65. Awarding plaintiffs damages of $1,700.00 for each of the seventeen established violations would award plaintiffs a total amount of $28,900.00. An award of that amount would total the amount of licensing fees that defendants would have paid for the period in question plus an additional thirty-five (35) percent. The court finds that such damages significantly exceeds the actual cost of a proper license and thus serves both to punish the defendants' conduct and discourage such future misconduct.

As such, we find that plaintiffs are entitled to statutory money damages in the amount of $28,900.00.

### C. Attorney's Fees and Costs

The plaintiffs also seek attorneys' fees and costs. The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. The Act further provides that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Id. "[T]he matter of fees under the Act is entrusted to the discretion of the district court." Lieb v. Topstone Indus., 788 F.2d 151, 154 (3d Cir. 1986). A court is to use its discretion in determining whether to award fees, and should consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 156. Once a court has determined that awarding fees is appropriate, the court "must then determine what amount is reasonable under the circumstances." Id. Factors to be considered are "the relative complexity of the litigation," the amount of fees charged the client, "the relative financial strength of the parties," the damages, and whether or not bad faith existed. Id.

The court will grant the plaintiffs' request for attorneys' fees. The defendants refused to enter into a performance license with the plaintiffs

despite the obvious need for one and then willfully infringed on plaintiffs' copyrights, which forced the plaintiffs to engage in litigation to protect their property.  Defendants have offered no defense in this matter.  Awarding attorneys' fees to the plaintiffs is therefore appropriate.  See A & N Music, 733 F. Supp. at 959 (awarding attorneys' fees to "(1) deter future copyright infringement; (2) ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works; and (3) penalize the losing party and compensate the prevailing party.") (citations omitted).

As to the amount of fees, plaintiffs' counsel submitted an affidavit detailing the basis for his fees.  (See Doc. 19, Declaration of Stanley H. Cohen).  In his declaration, counsel represents that he and another attorney from his law firm, Salvatore Guerriero, have been responsible for all of the proceedings related to the action in this court.  (Id. ¶ 24).  Counsel is an experienced copyright attorney, having filed or defended more than 175 civil actions involving copyright infringement over a career that spans more than forty years.  (Id. ¶ 6).  He has offered numerous lectures on copyright litigation at continuing legal education seminars.  (Id. ¶¶ 8-14).  Plaintiffs' counsel represents that an hourly rate of $450.00 is in accordance with, or lower than, customary attorney hourly rates in Pennsylvania for litigation involving issues under the Copyright Act, as were involved in the present case.  (Id. ¶ 21).

Moreover, the hourly rate of $440.00 charged by Attorney Guerriero is in

accordance with the hourly rates charged by other attorneys possessing plaintiffs' counsel's knowledge, experience and expertise in these issues. (Id.) Additionally, based on the experience of both of plantiffs' counsel, as well as the quality of the written submissions in this matter and the prevailing fee for services like counsels', the court finds that plaintiffs' counsels' hourly fees are a reasonable rate for the work performed.

Plaintiffs' counsel also submitted to the court copies of each of the bills sent to BMI for the work they performed, and have represented that BMI has paid each of their bills in full. (See id., Ex. A). The court finds that the time spent on the various tasks described in counsels' billing was reasonable given the length and complexity of the litigation, as well as the defendants' unwillingness to take the need for a license seriously, and will award plaintiffs their requested attorneys' fees of $3,785.00.

Plaintiffs also seek to recover their costs, which are available to the prevailing party under the Copyright Act. See 17 U.S.C. § 505. The court finds awarding of costs appropriate because of the defendants' willful infringement and unwillingness to negotiate or offer any type of response throughout the course of this litigation. The defendants forced litigation, and shall bear the costs. According to counsel's declaration, plaintiffs' costs for filing and serving the litigation amounted to $492.00. (Cohen Decl. ¶ 31). The court will order the defendants to pay those costs. Therefore, defendants will be required to pay a total of $4,277.00 in attorneys' fees and costs.

**Conclusion**

For the reasons stated above, the court will grant the plaintiffs' motion for default judgment.  The court will also grant the plaintiffs' request for a permanent injunction and award plaintiffs $28,900.00 in money damages and $4,277.00 in costs and counsel fees.  An appropriate order follows.


Date: <u>**August 12, 2014**</u>                             **s/James M. Munley**
                                                                                  **JUDGE JAMES M. MUNLEY**
                                                                                  **United States District Court**